UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA CAMP<br>3104 Unionville Pike<br>Hatfield, PA 19440<br>　　　PLAINTIFF<br>　　　　　v.<br>SAMSON MEDICAL TECHNOLOGIES, LLC<br>1815 Garden Avenue<br>Cherry Hill, NJ 08003<br>　　and<br>MARVIN SAMSON<br>1815 Garden Avenue<br>Cherry Hill, NJ 08003<br>　　　DEFENDANTS | : CIVIL ACTION<br>:<br>:<br>: NO. 2:21-cv-3408<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: JURY TRIAL DEMANDED |

## COMPLAINT

### *NATURE OF THE ACTION*

This is an action under Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights' Act of 1991, and the Pennsylvania Human Relations Act (PHRA) 43 P.S. §§ 951-963 to correct unlawful employment practices that discriminate on the basis of sex and to provide appropriate relief to Lisa Camp ("Plaintiff") who was adversely affected by such practices. During her employment with Defendant, Samson Medical, Inc. ("Samson Medical"), Plaintiff was subjected to quid pro quo sexual harassment and hostile work environment by her immediate supervisor and owner of the company, Marvin Samson ("Marvin"), which included but was not limited to the following: constantly questioning Plaintiff about her private and private intimate life and girlfriends, commenting and discussing his sexual desires and preferences, badgering Plaintiff to date him, and relegating Plaintiff towards the end of her employment as his personal

1

dating coordinator.. This created a sexually hostile and offensive work environment for her as a female, which Marvin never directed to any male employees.

Plaintiff made complaints of the sexual harassment, and disparate treatment based on her gender, to Marvin and to his son, Scott Samson ("Scott"), who was also her supervisor and who told her that Scott was aware of his father's behavior but that he would try to do something so that Plaintiff would have a job until she retired. However, neither Scott nor Marvin took any action. Then, in retaliation for her complaints and failure to date and have a personal relationship with him, Marvin began unreasonably and without basis demoting Plaintiff and eventually terminated her. When Plaintiff asked Marvin to explain why she was being terminated, he told her wanted Bruce Bennitt to remain at Samson Medical. Plaintiff had previously complained to both Marvin and Scott that Bennitt would harass Plaintiff, would frequently give her the finger, push trash cans in her direction, and ask her for money. At the time, Marvin only laughed at Bennitt's behavior and did nothing to stop him.

Marvin had created an out-of-control work environment at Samson Medical that was always charged with sex. Marvin had one of his previous female workers, a bookkeeper with no experience, purposefully wear dresses and high heels when he wanted to impress clients, and Marvin had sex with a girl that Plaintiff had introduced to him on the conference room table and made sure Plaintiff was aware of it, all because Plaintiff rejected Marvin's advances.

The discriminatory harassing and retaliating actions taken against Plaintiff resulted in monetary damage as well as emotional distress and also causing damages that include, but are not limited to, humiliation, anxiety and other physical ailments and emotional damages. Plaintiff also brings pendent state law claims.

Plaintiff duly and timely filed her charges of discrimination with Pennsylvania Human Relations Commission on February 6, 2021 and dual filed with the Equal Employment Opportunity Commission. Plaintiff has complied with all statutory requirements and this matter is ripe for private civil action. More than one year has passed since the filing of the charges of discrimination with the Pennsylvania Human Relations Commission, and Plaintiff has received her right to sue. See a true and correct copy of the right to sue letter, attached as Exhibit "A."

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3)" ("Title VII").

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

3. Jurisdiction over the state law claims is conferred upon this court by virtue of the Judicial Improvements Act of 1990, 28 U.S.C. § 1367.

**PARTIES**

4. Plaintiff Lisa Camp is an adult individual and a citizen of the Commonwealth of Pennsylvania, residing therein at 3104 Unionville Pike, Hatfield, PA 19440.

5. Defendant, Samson Medical Technologies, LLC ( "Samson Medical") is a privately-held company focused on providing hospital and alternate site pharmacists with injectable drug delivery systems and programs. Samson Medical is a corporation, partnership, unincorporated association and/or other business entity with its principal place of business located at 1815 Garden Avenue Cherry Hill, NJ 08003.  At all times material hereto, Samson Medical has

3

continuously been and is now doing business in the Commonwealth of Pennsylvania and terminated Plaintiff in Pennsylvania.

6.  Defendant Marvin Samson ("Marvin") is the owner of Samson Medical. He is being sued in his individual capacity for aiding and abetting discrimination and retaliation in violation of the Pennsylvania Human Relations Act.

7.  At all relevant times, Samson Medical has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h)

8.  At all times material hereto, Plaintiff was employed by Samson Medical.

## FACTUAL BACKGROUND

9.  Plaintiff was hired by Samson Medical as Marvin's administrative/personal assistant sometime in 2009, and up until her termination, Plaintiff received all positive reviews and performed her job well.

9.  Plaintiff's job functions were to:

    a. manage the Samson Medical Suite at Lincoln Financial Field during the Philadelphia Eagles Season, including the coordination of who was attending each game, ordering food, and distributing tickets and valet parking.
    b. Ordering food for meetings at Samson Medical (had to be beautifully displayed according to Samson)
    c. Serve Samson coffee and lunch everyday on dishes (no plastic)
    d. confirm flights on Samson's private jet, and provide lists of passengers, order food, and make all ground transportation arrangements,
    e. manage his yacht (Seaport Marina, NJ) and pontoon (Palm Beach, FL), and arrange all local trips and invite guests on the yacht.
    f. schedule all travel international, and national to attend meetings, events and trade shows, and prepare expense reports for submission.
    g. Plaintiff also handled Samson's personal life - making all travel arrangements for trips for his family, and friends - safaris, mediterranean cruises, and providing all passengers with a personal binder with travel

10. During her employment at Samson Medical, Plaintiff experienced severe and pervasive harassment from Marvin.

11. While Plaintiff was working, Marvin would look for opportune moments to make sexual and unwanted suggestive advances toward Plaintiff and also other female employees. Marvin never degraded male employees in this manner.

12. Marvin took every opportunity to complain to Plaintiff about his dating and sex life, with the intent that Plaintiff would show interest in him. Scott also frequently complained to Plaintiff about Marvin's family life. At one point, when Plaintiff was not showing interest in him, Marvin had Plaintiff's desk moved in direct view of his desk so that he could stare at Plaintiff's breasts. The staring at Plaintiff's breasts while talking to her about work and looking down her shirt in an obvious manner occurred on an almost daily basis.

13. If there was an important male client that Marvin wanted to entertain, Marvin would make female employees wear short skirts and red high heels. Marvin never degraded male employees in this manner.

14. Moreover, co-workers complained that Marvin was only nice to female employees that were attractive. One co-worker that left Samson Medical texted Plaintiff that "The prettier you are, the nicer Marvin treated you. If any of us had an "off" day, like not in heels or full face makeup, he'd treat us shitty". Samson did not treat males in a similar fashion.

15. Marvin became jealous of Plaintiff's relationship with her fiancé, a fact observed by Plaintiff's co-workers. Marvin wanted Plaintiff to end her relationship with her fiance. At one point when Plaintiff attempted to introduce Marvin to a friend so that Marvin would leave her alone, Marvin said no and told Plaintiff "I want you" .

16. Plaintiff was forced to do Marvin's dating "bidding", which had nothing to do with her job. At one point, Marvin made Plaintiff call Selective Search Dating, a high end dating search company. Marvin told Plaintiff that he wanted her to find someone who looked like Plaintiff. Scott even set up an email address that Plaintiff was to use for Marvin for the dating sites.

17. Plaintiff became fed up with Marvin's badgering and introduced him to her friend, Debra, whom Marvin met when Plaintiff brought her on his yacht in Philadelphia. Debra was 51, and at the time Marvin was 71. However, Marvin then began calling Plaintiff at night and demanded that Plaintiff drive over to Debra's house to see if she was with another man.

18. When Marvin apparently realized that Plaintiff was not going to date him or have sex with him, Marvin began giving Plaintiff menial tasks. Plaintiff was also being bullied at work by a co-worker Bruce Bennitt, who would frequently give Plaintiff the finger, push trash cans in her direction, and ask her for money. When Plaintiff complained to Marvin about Bennitt, he just laughed and did nothing about it.

19. When Plaintiff realized that Marvin was not going to stop the demeaning treatment of her and also do nothing about Bennitt, Plaintiff complained to Scott. Scott similarly did nothing.

20. On March 22, 2020, Scott called Plaintiff to stay home for two weeks. Scott told Plaintiff it was a temporary furlough and to go ahead and collect unemployment.

21. On March 29, 2020, Marvin called Plaintiff and told Plaintiff she was terminated but that he would revisit her situation in June of 2020.

22. After March 29, 2020, Plaintiff had several conversations with Scott and Marvin. Despite Marvin claiming that Plaintiff was voluntarily leaving, Plaintiff told Marvin she wanted

to work and was returning. Marvin refused and Plaintiff later discovered that she was the only one terminated.

23. Plaintiff was qualified for her position, received good reviews and promotions prior to her termination. Plaintiff avers that her termination was pretextual because of her refusal to date or have sex with Marvin.

## COUNT I

**Violation of Title VII of the Civil Rights Act of 1964 as Amended by the Civil Rights Act of 1991.**
**Plaintiff v. Samson Medical Technologies, LLC**

24. Plaintiff reasserts and reincorporates each and every allegation in the preceding paragraphs as if fully rewritten herein.

25. Defendant Samson Medical is an employer within the meaning of 42 U.S.C. §§ 2000e(a) and (b).

26. Title VII of the Civil Rights Act of 1964 as amended in 1991, and the regulations promulgated thereunder make it an unlawful employment practice for an employer to discriminate against any individual with respect to the terms and conditions or privileges of employment on the basis of gender. 42 U.S.C. §§ 2000e-2(a)(1). Defendant engaged in conduct that violates Title VII prohibiting sex discrimination by discriminating against Plaintiff and terminating her because of her gender.

27. Plaintiff is female and is therefore a member of a protected class.

28. Plaintiff was subjected to an adverse employment action as Defendants terminated her.

29. Because of her gender, Plaintiff was subjected to continual harassment by Marvin and also his male employee. Submission to these sexual advances was made explicitly or

implicitly as a term and condition of Plaintiff's employment.  Plaintiff's rejection of such conduct was used as the basis for employment decisions affecting her.

30.     Plaintiff was qualified for her position because she received good reviews and promotions .

31.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

32.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II

### TITLE VII- Sexual Harassment: Hostile Work Environment and Termination
### Plaintiff v. Samson Medical Technologies, LLC

33.     Plaintiff reasserts and reincorporates each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

34.     Defendant engaged in conduct that violates Title VII prohibiting sex discrimination by sexually harassing Plaintiff, by creating and encouraging a hostile work environment for Plaintiff based on sex, by refusing to remedy the situation and provide a reasonable and non-hostile work environment, and terminating Plaintiff because of her gender and sexual orientation.

35.     Plaintiff was subjected to unwelcomed and continual sexual harassment by Marvin.

36. Plaintiff was continually subjected to berating, sexist, humiliating, and degrading harassment because of her gender and sexual orientation.

37. The harassment was based on Plaintiff's sex.

38. The harassment unreasonably interfered with Plaintiff's work performance because she was subjected to an environment that was demeaning to women and was hostile.

39. Defendant knew or should have known that its employment practices had a created a sexually charged work environment which was hostile and harassing to female employees, including the plaintiff, and that they: failed to stop, continued, and/or encouraged the above-described discriminatory practice thus aiding and abetting the quid pro quo sexual harassment by its agents, servants, contractors, workmen, supervisors, managers and employees in violation of law.

40. Defendant knew or should have known of the charged sexual harassment and hostile environment because the harasser, Marvin, was the owner and his son Scott was complicit.

41. Defendant failed unreasonably to take prompt and appropriate corrective action because it never condemned nor tried to prevent the hostile environment.

42. As a direct and/proximate result of the above-described discriminatory actions of Defendant, Plaintiff suffered financial injury including but not limited to past loss of earnings, future loss of earnings, loss of earning potential, loss of benefits.

43. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

### COUNT III -TITLE VII – RETALIATION
### Plaintiff v. Samson Medical Technologies, LLC

44. Plaintiff incorporates by reference the allegations in the preceding paragraphs as though each one was set forth herein at length.

45. Plaintiff engaged in protected activity under Title VII by complaining to Marvin and Scott about the unlawful sexual harassment and gender discrimination.

46. Marvin's termination of Plaintiff's employment after her complaints and refusals to date him constitutes unlawful retaliation.

47. As a direct and proximate result of Samson Medical's violations of Title VII, Plaintiff has sustained the injuries, damages and losses set forth herein and have incurred attorneys' fees and costs.

48. Plaintiff demands an award of compensatory and punitive damage, prejudgment interest, attorneys' fees, costs, and expenses and whatever other equitable relief the Court deems proper.

### COUNT IV
### Violations Under the Pennsylvania Human Relations Act
### Plaintiff v. Samson Medical Technologies, LLC and Marvin Samson

49. Plaintiff hereby incorporates by reference the preceding paragraphs of this complaint as though each were set forth at length herein.

50. Defendants' course of unlawful conduct as above-described discriminated against Plaintiff solely on the basis of her gender creating a hostile work environment and retaliating against Plaintiff for her complaints ofdiscrimination/harassment and hostile work environment in violation of the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 955(a).

51. Defendants knew or should have known that its employment practices had a created a sexually charged work environment which was hostile and harassing to female employees, including the Plaintiff, and that they: failed to stop, continued, and/or encouraged the above described discriminatory practice thus aiding and abetting the quid pro quo sexual harassment by its agents, servants, contractors, workmen, supervisors, managers and employees in violation of the PHRA, 43 P.S. § 955(e).

52. As a direct and/or proximate result of the above-described discriminatory actions of Defendants, Plaintiff suffered financial injury including but not limited to past loss of earnings, future loss of earnings, loss of earning potential, loss of benefits.

53. As a direct and/or proximate result of the above-described discriminatory actions of Defendants, Plaintiff suffered emotional distress, including but not limited to past and present pain and suffering, humiliation, depression, anxiety, and embarrassment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a. for a money judgment representing compensatory damages, including lost wages, and all other sums of money, including retirement benefits and other employment benefits, together with interest thereon;

b. For a money judgment for compensatory and punitive damages for creating, permitting, and continuing retaliation and discrimination against Lisa Camp, including compensation for the distress that arises from being the target and victim of unlawful discriminatory and retaliatory conduct and being made unlawfully subject to a hostile work environment and retaliator for exercising the lawful rights afforded to her under federal and state anti-discrimination laws;

  c. For a money judgment representing prejudgment interest;

  d. For an Order directing Defendants pay relief to Lisa Camp in the form of front pay for those wages and benefits she would be receiving if she had been properly promoted;

  e. That the Court retain jurisdiction over this action until the Defendants have fully complied with the Orders of this Court and that the Court require Defendants to file such reports as may be necessary to supervise such compliance;

  f. For the costs of suit, including an award of reasonable attorneys' fees;

  g. Award to Lisa Camp past and future damages for loss of income, growth opportunities, and all benefits denied to her due to the improper and unlawful actions of the Defendants;

  h. For such other and further relief as may be just and proper, including all relief afforded to victims of discrimination, and retaliation for being subject to workplace discrimination, harassment, retaliation, and a hostile work environment.

JURY TRIAL DEMANDED

                 Respectfully submitted:

Dated: July 30, 2021

                 _____
                 Robert J. Birch, Esquire
                 ID. No. 65816
                 465 Commerce Drive
                 Fort Washington, PA 19034
                 (610) 277-9700
                 robert@robertbirchlaw.com